UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE :

PATRICIA SUNDERMANN,

    Debtor.
_____/

Chapter 7
Case No. 11-41640
Hon. Walter Shapero

## OPINION GRANTING MOVANT'S MOTION TO ENFORCE ORDER OF DISCHARGE, CONTEMPT, AND SANCTIONS

### INTRODUCTION

Patricia Sundermann, the Debtor ("Movant") filed a Motion for Sanctions against Mark Sokoloff, Kathy J. Swainson, Linda Griffith, Sandra Goulding, and David Isabell (collectively, "Respondents") in the above captioned matter on September 25, 2014. Movant states in her Motion for Sanctions, that she is seeking $35,000 for "significant aggravation, emotional distress, and inconvenience", as well as $10,000 in attorney fees, and $50,000 in punitive damages for alleged violations of the discharge injunction pursuant to 11 U.S.C. § 524. The proposed order provides for an additional $10,000 sanction, and language requiring Respondents to cease and desist all collection activities in the St. Clair County, Michigan Probate Court (the "State Court").

### BACKGROUND

In 1994, Wellington Hayes, the Movant's father, created a joint revocable living Trust (the "Hayes Trust") with his second wife Elizabeth Hayes. After Elizabeth Hayes passed away, Wellington Hayes made several amendments to the Hayes Trust, one of which named Movant successor Trustee. After Wellington Hayes passed away, Kathy J. Swainson, Linda Griffith,

1

Sandra Goulding, and David Isabell (the "Beneficiaries") hired Mark Sokoloff as their attorney to bring a petition against Movant in the State Court (the "State Court Action") regarding her actions in respect to the Hayes Trust. The Beneficiaries are the nieces and nephew of Elizabeth Hayes.

In the early stages of the State Court Action, Movant was removed as successor Trustee of the Hayes Trust and was replaced by attorney Robert Ladd. Judge Tomlinson of the State Court also issued findings of fact and conclusions of law dated September 29, 2008, requiring Movant to reimburse the Hayes Trust in the principal amount of $397,770.83 plus statutory interest for reimbursement of cash that was improperly withdrawn by Movant from that Trust. Ex. 1 at 6.

Movant was also convicted of criminal contempt by the State Court on May 6, 2009 for deliberately misleading the Court and failing to disclose certain relevant facts about her retrieving assets from the Hayes Trust. Movant was then sentenced to 15 days in the St. Clair County Intervention Center, but the sentence was suspended pending completion of a term of non-reporting probation that was to continue until completion of the Hayes Trust administration. Movant was also required to cooperate with all discovery requests properly promulgated by the Trustee or other interested parties relating to the administration of the Hayes Trust. Ex. 2 at 1-2. Apparently, Mr. Ladd remained at that time the successor Trustee of the Hayes Trust.

Movant filed for chapter 13 bankruptcy protection on January 23, 2011. The case was later converted to chapter 7 on March 30, 2011. On Movant's schedules, she listed "Robert P. Ladd Esquire on behalf of Wellington Hayes Trust" as a creditor in the amount of $396,000. No non-dischargeability action was filed in respect to that debt, and on August 12, 2011, Movant was granted a discharge.

On January 3, 2012, the State Court Judge issued another order requiring Movant to pay $69,696 to the Hayes Trust for "profit she wrongfully realized from the sale of the Trust's DTE Stock…" and for "Trust money she wrongfully used…". On March 26, 2013 (Movant's chapter 7 case still being open), this Court ruled that this State Court order was void, because its entry violated the discharge injunction.

On September 3, 2013, the State Court removed Robert Ladd as Trustee and appointed John Adair as his Successor Trustee, who then began the process of winding up the affairs of the Hayes Trust. During that time, Mark Sokoloff claims to have raised issues in the State Court regarding Movant's alleged violation of the several orders that were issued in the State Court Action by the State Court Judge. This led to Mr. Sokoloff representing the Beneficiaries in filing in the State Court a "Motion To Show Cause Why Patricia Sundermann Should Not Be Held In Contempt Of Court For Violating The Orders Of The Probate Court" (the "Original Show Cause Motion"). That Motion was filed on September 12, 2014 and requested the State Court to order Movant to appear and show cause as to why she should not be held in contempt of that Court for violating several of its orders. In that Original Show Cause Motion, there are listed the following as examples of orders that were allegedly violated by Movant:

 a. Order dated February 21, 2008 – re: turning over all Trust assets to Trustee.
 b. Order dated October 16, 2008 – re: returning specific assets to the Trust.
 c. Order dated March 25, 2009 – re: providing title commitment, ownership information, and an appraisal for realty located in Ortonville, MI.
 d. Order dated May 7, 2009 – re: cooperating with requests for information about assets of Wellington Hayes; placed on probation for giving false information to Court.
 e. Order dated March 24, 2010 – re: determining specific amount of money owed by Sundermann to Trust pursuant to Order of Abstention by U.S. Bankruptcy Court.
 f. Order dated September 21, 2011 – re: approval of real estate sale; prohibiting interference with sale, not removing items from Ortonville property and leaving property in existing condition.

    g. Order dated January 3, 2012 – re: additional money to be paid by Sundermann to Trust.

Ex. C at 2.

Following the filing of the Motion for Sanctions and before the State Court held any hearing on it, an amendment to the Original Show Cause Motion (the "Amended Show Cause Motion") was filed on September 29, 2014 (the Original Show Cause Motion and the Amended Show Cause Motion are hereinafter collectively referred to as the "Show Cause Motions"). The Amended Show Cause Motion made some changes to the original Show Cause Motion. First, it states "under no circumstances should this Motion to Show Cause be construed as an attempt to collect any debt from any person, at any time, especially from Patricia Sundermann." Second, it deleted certain orders that were alleged to have been violated by Movant, i.e. orders "e" and "g" listed above. Order "g" was the order which this Court previously ruled violated the discharge injunction.

    The Original Show Cause Motion also stated the following:

> These Court Orders, which were directed at Patricia Sundermann, were not complied with, and such non-compliance made the ongoing Trust administration more time consuming and more costly **to the parties attempting to retrieve the assets and money from Sundermann for the Trust.**

(emphasis added). This statement was amended in the Amended Show Cause Motion to state the following:

> These Court Orders, which were directed at Patricia Sundermann, were not complied with, and such non-compliance made the ongoing Trust administration more time consuming and more costly.

The last change from the Original Show Cause Motion to the Amended Show Cause Motion dealt with the request for relief. In the original Show Cause Motion, the Respondents stated the following:

4

> WHEREFORE, Petitioners, being the beneficiaries of the Hayes Trust, hereby request this honorable Court to order Patricia Sundermann to appear and show cause why she should not be held in contempt of Court for violating the Orders of this Court **as listed**, and for being in violation of the terms of her probation as identified in Order dated May 7, 2009, and take whatever action this Court deems necessary and appropriate.

(emphasis added). The Amended Show Cause Motion states the request for relief as follows:

> "WHEREFORE, Petitioners, being the beneficiaries of the Hayes Trust, hereby request this honorable Court to order Patricia Sundermann to appear and show cause why she should not be held in contempt of Court for violating the Orders of this Court, and for being in violation of the terms of her probation **for criminal contempt** as identified in Order dated May 7, 2009, and take whatever action this Court deems necessary and appropriate."

(emphasis added).

Movant claims that the mere filing of the Show Cause Motions in the State Court were themselves attempts by Respondents to enforce the listed orders, and thus constituted an attempt to collect a discharged debt in violation of the discharge injunction, occasioning appropriate sanctions. Respondents argue the filings were simply, and only, an attempt to initiate criminal proceedings against the Movant and, therefore, were not a violation of the discharge injunction.

## GOVERNING LAW

11 U.S.C. § 524, commonly referred to as the discharge injunction, provides in relevant part as follows:

> (a) A discharge in a case under this title-
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
> (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section

5

> 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

Obtaining a discharge of debts is a principal reason debtors file for bankruptcy. Without an injunction preventing collection efforts on debts that have been discharged, there would be little motivation for many Debtors to even consider filing.

> Congress designed and intended the permanent injunction "to give complete effect to the discharge," "to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts," and "to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it."

*In re Latanowich*, 207 B.R. 326, 334 (Bankr. D. Mass. 1997) (quoting S.Rep. No. 989, 95th Cong., 2nd Sess. 80–81 (1978)); *In re Borowski*, 216 B.R. 922, 924 (Bankr. E.D. Mich. 1998). "A debtor who is injured by a willful violation of the discharge injunction is entitled to damages, including reasonable attorney fees. Otherwise the discharge injunction would be essentially without meaning or effect." *In re Miller,* 247 B.R. 224, 228 (Bankr. E.D. Mich.).

## ANALYSIS

The parties initially argued extensively in their post-evidentiary hearing briefs about whether the State Court authorized Respondents to file the Show Cause Motions. Movant claims that the State Court did not authorize Respondents to file the Show Cause Motions, but instead cautioned Respondents not to infringe upon Movant's rights. Respondents argue that the State Court not only gave them authority to file the Show Cause Motions, but requested it and only cautioned Respondents in regards to Movant's rights created by her bankruptcy filing. This Court does not find it relevant to determine whether the State Court did or did not authorize or request

Respondents to file the Show Cause Motions. A State Court could authorize a number of different orders that would be void for violating another law. In fact, as noted during the administration of the State Court Action, the State Court entered the order dated January 3, 2012 that required the Movant to pay $69,696 to the Hayes Trust, after Movant had obtained a discharge of the debt in question. As previously stated, this Court later voided that order as a violation of the discharge injunction.

If such were not authorized (and we are not talking here about something done by a fiduciary) that is something that the State Court, not this Court, must deal with. If the filing of the Show Cause Motions and pursuance of any resulting order are found to violate the discharge injunction, it would make no difference whether or not a State Court authorized the filing, though the fact of such authorization might be relevant to the willfulness or other required premises to the remedy or remedies for that violation.

The relevant question for this Court is whether the Respondents were attempting to collect on the discharged debt by filing the Show Cause Motions in the State Court. If so, the discharge injunction was violated and Respondents are subject to sanctions. Movant cites the above noted orders listed in the Show Cause Motions as evidence that Respondents were trying to enforce those orders and hold Movant in contempt for not complying with them. Respondents, however, claim that the Show Cause Motions are merely an attempt to have Movant held in criminal contempt for alleged violations of the listed orders. Respondents claim that the only reason the orders requiring Movant to pay money or return assets to the Hayes Trust were listed, such as orders "a" and "b", was to give the State Court examples of how many times Movant has violated its orders. Further, the Amended Show Cause Motion removed the order that this Court voided for violating the discharge injunction, as well as an order dealing with determining a

7

specific amount of money that Movant owed to the Hayes Trust. The Amended Show Cause Motion however still cites orders regarding turning over Trust assets to the Hayes Trust and the Trustee.

Movant cites the case of *In re Goodman*, which this Court finds relevant to the analysis in this case:

> The automatic stay, which goes into effect upon the filing of a bankruptcy petition, serves as broad protection against interference with the bankruptcy estate. Among its effects is to bar "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(2). However, it does not apply to "the commencement or continuation of a criminal action or proceeding against the debtor." Id. § 362(b)(1). **Therefore, the first step in this analysis is to determine whether the arrest warrant in this case was criminal or civil in nature**.

277 B.R. 839, 841 (Bankr. M.D. Ga. 2001) (emphasis added).

While neither of the Show Cause Motions explicitly sought to have Movant pay the discharged debt, they similarly fail to disavow any intent to do so. However, they do request the State Court "take whatever action this Court deems necessary and appropriate." The first step in determining whether or not there has been a violation of the discharge injunction in this case is to determine whether the Amended Show Cause Motion seeks civil or criminal contempt. *See id.*

Mr. Sokoloff testified that his intent when filing the Show Cause Motions was to initiate criminal contempt proceedings against the Movant. Respondents, however, claim that the Show Cause Motions attempt to request the State Court to enforce orders requiring Movant to pay Respondents for a debt that has been discharged. The determination of whether the Show Cause Motions seek civil or criminal sanctions or relief is relevant to the disposition of this motion because of the fact that criminal proceedings essentially do not violate the discharge injunction. "The mere fact that a debt has been discharged in bankruptcy does not preclude a criminal action

from proceeding based on the debtor's alleged criminal conduct in relation to the debt." *In re Michalski*, 452 F. App'x 656, 658 (6th Cir. 2011) (quoting *In re Daulton*, 966 F.2d 1025, 1028 (6th Cir. 1992)).

Although it may not always be entirely clear whether a proceeding is criminal or civil in nature, the Sixth Circuit attempted to clarify the differences in its opinion in *United States v. Bayshore Associates, Inc.*, 934 F.2d 1391 (6th Cir. 1991). The Court held the following, which is relevant to the present situation:

> Broadly, the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant. *See United States v. Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947) (purpose of civil contempt is "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained"); *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911) (in civil contempt "the punishment is remedial, and for the benefit of the complainant"); *Spindelfabrik Suessen–Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* 903 F.2d 1568, 1578 (Fed.Cir.1990). Whereas, the purpose of criminal contempt is punitive—"to vindicate the authority of the court." *Gompers,* 221 U.S. at 441, 31 S.Ct. at 498. The same conduct, however, may be subject to both criminal and civil contempt sanctions.

Respondents' Show Cause Motions requested Movant to appear and show cause why she should not be held in contempt of Court for violating various State Court orders. The Show Cause Motions can arguably be interpreted two different ways. Movant's approach is to read the Show Cause Motions as attempting to have the State Court enforce the orders listed, which Movant allegedly violated, most but not all, of which were civil in nature. If taking that approach, the Show Cause Motions would almost certainly violate the discharge injunction. Some of the orders listed in the Amended Show Cause Motion require the Movant to return assets to the Hayes Trust. Because the debt relating to the Hayes Trust has been discharged, attempting to enforce these orders would appear to be a clear violation of the discharge injunction.

9

On the other hand, nowhere in either the Original Show Cause Motion or the Amended Show Cause Motion is there any request made by Respondents to have the State Court enforce any of the orders listed. Mr. Sokoloff testified that the reason he listed the orders in the Show Cause Motions (some of which required Movant to pay money or return property to the Hayes Trust) was to bring to the State Court's attention alleged violations of several orders so that the State Court could commence criminal contempt proceedings against Movant.

Taking into consideration all of the relevant facts concerning this case, this Court determines that the Amended Show Cause Motion seeks both civil and criminal contempt sanctions. Respondents requested the State Court to hold Movant in contempt for alleged violations of her probation. This is clearly an attempt to commence criminal contempt proceedings against Movant. With respect to the State Court orders Movant allegedly violated, Respondents urge this Court to find that the listing of the State Court orders was not an attempt to initiate civil contempt proceedings against Movant. This cannot be the case.

Orders "a" and "b" as listed in the Original Show Cause Motion deal directly with Movant paying money or returning property to the Hayes Trust. These issues were all dealt with when the State Court entered judgment in favor of the Respondents. The fact that Respondents, in the Amended Show Cause Motion, added the statement "Under no circumstances should this Motion to Show Cause be construed as an attempt to collect any debt from any person, at any time, especially from Patricia Sundermann" should not be accepted as a remedy for listing such orders in the Show Cause Motions.

Respondents did not specifically indicate what type of relief they were requesting when they filed the Show Cause Motions. As mentioned, the Show Cause Motions simply request the State Court "take whatever action this Court deems necessary and appropriate." Respondents left open

the possibility that the State Court would again issue orders requiring Movant to pay money or turn over property to Respondents. Because the monetary obligations referenced in the allegedly violated State Court orders have been discharged, Respondents should have known better than to file the Show Cause Motions seeking to hold Movant in contempt for violations thereof.

With respect to orders "c," "d," and "f," as listed in the Original Show Cause Motion, Respondents have not violated the discharge injunction. Order "c" deals with Movant's obligation to provide title commitment, ownership information, and an appraisal for realty that Movant no longer owns. Order "d" requires Movant to cooperate with requests for information about assets of Wellington Hayes. Even though Movant's obligation for the debt has been discharged, there is nothing preventing a state court from ordering her to provide information about the assets of the Trust. Order "f" requires Movant to refrain from interfering with the sale of certain real estate and requiring Movant to leave the property in its existing condition. This order was entered by the State Court after the debt owed to the Beneficiaries was discharged. Additionally, as a term of Movant's probation, she was required to comply with all Court orders or be subject to incarceration. Because these orders do not require Movant to pay money or return property to the Hayes Trust, they do not violate the discharge injunction. Thus, Movant may be liable for criminal sanctions in the State Court if the State Court does indeed find that she violated these orders.

As a result of the foregoing, this Court finds that the Amended Show Cause Motion seeks civil contempt sanctions (by way of attempting to have these orders enforced) with respect to orders "a" and "b" as listed in the Original Show Cause Motion, and thus violated the discharge injunction. The Court further concludes that the Amended Show Cause Motion does not violate

the discharge injunction with respect to orders "c," "d," and "f," as listed in the Original Show Cause Motion.

## DAMAGES

Movant has requested $50,000 in punitive damages, in addition to $10,000 as a sanction, $35,000 for emotional distress and aggravation, and $10,000 in attorney fees. Granting requests for punitive damages and sanctions is discretionary and the facts of this case do not rise to the level of egregiousness required to justify such an award. The request for emotional distress and aggravation is also denied because Movant has not substantiated such a claim. With respect to damages for attorney fees, the Court will require Movant to submit a detailed itemization of attorney fees within 14 days of the entry of the order pursuant to this Opinion, and will allow Respondents 14 days from the filing thereof to file any objections. The Court will then award such amount of attorney fees associated only with this Motion for Sanctions. Because Respondents are free to move forward with an amended Show Cause Motion in the State Court only with respect to orders "c," "d," and "f" as listed in the Original Show Cause Motion, Movant would be subject to the attorney fees associated with defending that action regardless.

## CONCLUSION

For the reasons stated, this Court grants Movant's Motion to Enforce Order of Discharge, Contempt, and Sanctions to the extent stated herein and subject to the procedure described above. Movant shall present under the Local Rules an appropriate order effectuating this Opinion.

.

**Signed on November 24, 2015**

                                             **/s/ Walter Shapero**
                                               **Walter Shapero**

United States Bankruptcy Judge

13